IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. JOEL C. NKEMAKOLAM, | § | CV NO. 5:15-CV-99-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| NORTHSIDE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |
| _____ | § | |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Before the Court is a Motion to Dismiss filed by Defendant Northside Independent School District ("Defendant" or "NISD") (Dkt. # 8).  On June 10, 2015, the Court held a hearing on the motion.  Malinda Ann Gaul, Esq., represented Plaintiff Dr. Joel C. Nkemakolam ("Plaintiff" or "Nkemakolam"); Donald C. Wood and Katie E. Payne, Esqs., represented Defendant.  After careful consideration of the memoranda in support of and in opposition to the Motion, and in light of the parties' arguments at the hearing, the Court, for the reasons that follow, **GRANTS** Defendant's Motion to Dismiss (Dkt. # 8).

## BACKGROUND

In August 2007, Defendant hired Plaintiff, who identifies as black and Nigerian, as a special education inclusion teacher in social studies.  ("Am.

Compl.," Dkt. # 6 ¶ 7.)  Between 2007 and 2013, Plaintiff served as a collaborative teacher in social studies for three years and an inclusion teacher for math for one year.  (Id.)  In August 2013, Defendant assigned Plaintiff to a work center as a special education teacher.  (Id.)

Plaintiff maintains that, on December 5, 2013, he received a letter of reprimand from the Principal, which claimed he failed to perform professional responsibilities as a special education teacher, failed to adhere to District Policy, and failed to serve the needs of students in accordance with their Individualized Education Programs ("IEPs").  (Id. ¶ 10.)  Plaintiff contends that he did not fail in any ways outlined by the letter, and that, of the nine similarly situated special education teachers, none were black and Nigerian, but all demonstrated the failures outlined in the letter of reprimand and none received a letter of reprimand.  (Id. ¶ 11.)

Plaintiff alleges that, on February 26, 2014, despite indications from Defendant that he was showing improvement, Plaintiff received a letter from the Superintendent stating that the Superintendent would recommend to the Board of Trustees on March 25, 2014, not to offer a new two-year contract due to performance concerns.  (Id. ¶ 12.)  Again, Plaintiff alleges that none of the similarly situated teachers outside of the protected classes with performance concerns were terminated.  (Id.)

On April 21, 2014, Plaintiff filed a charge of discrimination with the EEOC (the "First Charge of Discrimination"), which identified the letter of reprimand from the Principal and letter from the Superintendent as incidences of employment discrimination.  (Id. ¶ 13.)  On May 12, 2014, Plaintiff received a written review showing that he had made improvements in accordance with the letter of reprimand.  (Id. ¶ 14.)

Plaintiff alleges that during the first week of the 2014–15 school year, the Principal wrongly accused him of failing to submit his lesson plan for the first week of school.  (Id. ¶ 15.)  Plaintiff alleges that he showed the Principal where he had submitted a lesson plan.  (Id.)  Plaintiff further alleges that he was only one of two special education teachers that submitted the lesson plan for the first week of school.  (Id.)

Plaintiff further alleges that, on August 26, 2014, the Principal visited Plaintiff's classroom twice.  (Id. ¶ 16.)  Plaintiff alleges that the Principal visited his classroom again on September 2, 2014, "asking for the draft copies of Plaintiff's notes he used for data collection," and again on September 3, 2014, asking for the draft copies.  (Id.)

Plaintiff says that, on September 3, 2014, the Principal asked to meet with Plaintiff during his conference period on the following day, and Plaintiff agreed.  (Id. ¶ 17.)  Plaintiff alleges that, despite their agreement, the Principal

arrived at Plaintiff's classroom on the morning of September 4, 2014, asking for information while Plaintiff was preparing for his students' arrival.  (Id. ¶ 17.)

According to Plaintiff, the Principal arrived unannounced at Plaintiff's classroom during Plaintiff's lunch period on September 11, 2014, with the special education campus coordinator to discuss Plaintiff's data collection.  (Id. ¶ 18.) Plaintiff contends that he explained how he was trained on data collection in December 2013 and described the spreadsheet that he used to collect grades during each marking period.  (Id.)

Plaintiff alleges that between August 25, 2014 and December 19, 2014, the Principal came to Plaintiff's classroom more than 35 times.  (Id. ¶ 19.) Plaintiff filed a second charge of discrimination with the EEOC on October 6, 2014 (the "Second Charge of Discrimination"), citing the frequent visits of the Principal to Plaintiff's classroom.  (Id. ¶ 20.)

Plaintiff alleges that, on December 19, 2014, he received a letter stating that Plaintiff would be placed on administrative leave beginning January 5, 2015.  (Id. ¶ 21.)  In response, Plaintiff resigned by signing a Resignation and Release Agreement, which avoided public termination of employment.  (Id.) Plaintiff filed a third charge of discrimination with the EEOC on January 29, 2015 (the "Third Charge of Discrimination"), citing his termination.  (Id.)  That charge is still pending before the EEOC.  (Id.)

On February 9, 2015, Plaintiff filed a complaint in this Court against Defendant, alleging discrimination, retaliation, and hostile work environment claims under Title VII of the Civil Rights Act of 1964.  (Id. ¶¶ 22–27.)  Plaintiff seeks declaratory relief that the acts identified in his Complaint violate Title VII; injunctive relief restraining those violations of Title VII, directing Defendant to take affirmative action to ensure the effects of the unlawful employment practices are eliminated and do not continue to affect Plaintiff, and directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's treatment and to make him whole for all earnings he would have received including wages, pension, and other lost benefits; compensatory damages, and attorney's fees and costs.  (Id. ¶ 28.)  On May 22, 2015, Defendant filed the instant Motion to Dismiss (Dkt. # 8).  On May 29, 2015, Plaintiff filed his Response (Dkt. # 12), and on June 5, 2014, Defendant filed its Reply (Dkt. # 13).

<u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  In analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d

343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d

191, 205 (5th Cir. 2007)).

   To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead

"enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009).

DISCUSSION

   Defendant moves to dismiss the following claims: (1) Plaintiff's

claims for punitive or exemplary damages, as such damages are unavailable under

Title VII; (2) Plaintiff's discrimination claim because he has failed to plead an

adverse employment action; (3) Plaintiff's hostile work environment claim because

he has failed to demonstrate that the harassment altered a term, condition, or

privilege of employment and that the complained of harassment was based on race;

and (4) Plaintiff's retaliation claim because he has failed to establish an adverse

employment action or that an adverse employment action was caused by the

protected activity. (Dkt. # 8 at 3–12.) The Court addresses each argument in turn.

I.      Claim for Punitive Damages

        Defendant first asks the Court to dismiss any claims for punitive or

exemplary damages, on the basis that such damages are unavailable against

government agencies under Title VII.  (Id. at 3.)  Defendant references the

following language in Plaintiff's First Amended Complaint: "[i]njunctive and

declaratory relief, damages, and other appropriate legal and equitable relief are

sought pursuant to 42 U.S.C. § 2000e-5(f) and (g), and 42 U.S.C. § 1981a."  (Id.

(citing Am. Compl. ¶ 6).)

        As Plaintiff responds, the First Amended Complaint does not list

punitive or exemplary damages as categories of damages that he seeks, either in

the statement that Defendant cites or in his more specific listing of damages in his

prayer.  (See Am. Comp. ¶ 28.)  Accordingly, the Court **DENIES AS MOOT**

Defendant's Motion to the extent it seeks to dismiss claims for punitive or

exemplary damages, since none have been made.

II.     Discrimination Claim

        "To succeed on a claim of intentional discrimination under Title

VII . . . or Section 1981, a plaintiff must first prove a prima facie case of

discrimination."  Wallace v. Tex. Tech Univ., 80 F.3d 1042, 1047–48 (5th Cir.

1996) (internal citations omitted).  When there is no direct evidence of

discrimination, a plaintiff can make out "a prima facie case through a four-element

test that allows an inference of discrimination," id., by showing that "(1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances."   Wesley v. Gen. Drivers, Warehousemen and Helpers Local 745, 660 F.3d 211, 213 (5th Cir. 2011) (quoting Lee v. Kan. City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009)).

Defendant contends that Plaintiff has failed to plead an adverse employment action, and therefore has pled insufficient facts to make out his prima facie case of discrimination.  Plaintiff counters that the adverse employment action was the February 26, 2014 letter that indicated that the Superintendent would not recommend renewal of Plaintiff's contract at the March 25, 2014 Board of Trustees meeting.  (Dkt. # 12 at 4.)  Because Defendant only challenges the third element of the prima facie case, the Court assumes, arguendo, that Plaintiff's allegations are sufficient to establish the other three elements.

As related to discrimination under Title VII, an adverse employment action must consist of an ultimate employment decision, such as "hiring, firing, demoting, promoting, granting leave, and compensating."  Thompson v. City of Waco, 764 F.3d 500, 503 (5th Cir. 2014).  "An employment action that does not

affect job duties, compensation, or benefits is not an adverse employment action." Id. (internal quotation marks omitted) (quoting Pegram v. Honeywell, Inc., 361 F.3d 272, 281–82 (5th Cir. 2004)).

District courts throughout the Fifth Circuit routinely find that a district's decision not to renew a teacher's contract is an adverse employment action sufficient to establish the third element of the prima facie case of employment discrimination. See, e.g., King v. Lawrence Cnty. Bd. of Educ., No. 2:12-CV-68-KS-MTP, 2013 WL 319286, at *2 (S.D. Miss. Jan. 28, 2013) (finding allegations that the plaintiff–teacher's employment contract was not renewed sufficient to establish an adverse employment action); Turman v. Greenville Indep. Sch. Dist., No. CIV.A. 3:03-CV-1786-M, 2004 WL 350683, at *5 (N.D. Tex. Jan. 27, 2004) (same); Jefferson v. Lancaster Indep. Sch. Dist., No. CIV.A. 3:01-CV-771-AH, 2001 WL 1631522, at *2–3 (N.D. Tex. Dec. 17, 2001) (same).

However, Plaintiff has failed to allege that the Board of Trustees did not renew Plaintiff's contract for the 2015–17 term. Instead, he pleads only that the Superintendent recommended a non-renewal of his contract. Without any allegations as to the ultimate conclusion of the Board,[1] the Court has no ability to

---

[1] At the hearing, Plaintiff's counsel argued facts indicating that the Board of Trustees decided not to vote on the issue and, consequently, elected not to extend his two-year contract for another two years. However, at the Motion to Dismiss stage, the Court is limited to the facts in the pleadings. Collins v. Morgan Stanley

assess whether allegations related to the Superintendent's letter were actually executed by the Board or were mere threats, which are insufficient to demonstrate an adverse employment action.   See, e.g., Hernandez v. Crawford Bldg. Material Co., 321 F.3d 528, 532 n.2 (5th Cir. 2003) (citing Mattern v. Eastman Kodak Co., 104 F.3d 702, 708 (5th Cir. 1997) (finding that oral threats to fire an employee did not amount to an ultimate employment decision), abrogated on other grounds, Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2013)).   Accordingly, Plaintiff's contract-renewal allegations are insufficient to establish an adverse employment action to support his discrimination claim.

Plaintiff's Complaint does allege facts that would support a showing of constructive discharge, which would amount to an adverse employment action. Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001) (permitting constructive discharge as a basis for adverse employment action in the discrimination context).   Specifically, Plaintiff alleges that on December 19, 2014, he was advised he was being placed on administrative leave, and was then given a Resignation and Release Agreement to sign in order to avoid a public termination. (Am. Compl. ¶ 21.)   However, as Plaintiff states in his Complaint and reiterates in his Response, that claim is not yet ripe for adjudication, as the EEOC has not yet issued a right-to-sue letter.   (Id.; Dkt. # 12 at 8.)   See also Taylor v. Books A

Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).   Oral argument cannot cure the pleading deficiency.

Million, Inc., 296 F.3d 376, 379 (5th Cir. 2002) (noting that Title VII requires

plaintiffs to exhaust their administrative remedies by (1) timely filing a charge with

the EEOC) and (2) receiving a statutory notice of right to sue).

Because Plaintiff has failed to allege an adverse employment action to

support his claim, he has failed to make out a prima facie case of discrimination.

However, because exhaustion of administrative remedies would cure this

procedural default, the Court **DISMISSES** the claim **WITHOUT PREJUDICE**.

See Pinkard v. Pullman-Standard, 678 F.2d 1211, 1218 (5th Cir. 1982) ("Such a

dismissal would be without prejudice, and the plaintiff could bring a new action

upon receipt of a right-to-sue letter.").

III.    Hostile Work Environment Claim

To make out a hostile work environment claim under Title VII, a

plaintiff must show that he "(1) belongs to a protected group; (2) was subjected to

unwelcome harassment; (3) the harassment complained of was based on [race];

(4) the harassment complained of affected a term condition, or privilege of

employment; [and] (5) the employer knew or should have known of the harassment

in question and failed to take prompt remedial action."  Royal v. CCC & R Tres

Arboles, L.L.C., 736 F.3d 396, 401 (5th Cir. 2013) (citing Hernandez v. Yellow

Transp., Inc., 670 F.3d 644, 651 (5th Cir. 2012)).

11

According to Plaintiff, the basis of the hostile work environment claim is that the Principal came to Plaintiff's classroom more than 35 times between August and December 2014, and that none of the similarly situated non-class members who demonstrated performance concerns and failed to submit lesson plans were subjected to such visits.[2]  (Dkt. # 12.)

In the context of a hostile work environment claim, "harassment is based on race if the complained-of conduct had a racial character or purpose." Jones v. Dall. Cnty., 47 F. Supp. 3d 469, 483 (N.D. Tex. 2014) (internal quotation marks omitted).  "Plaintiffs must demonstrate a connection between the allegedly harassing incidents and their protected status."  Id. (alterations and internal quotation marks omitted); see also Raj v. La. State Univ., 714 F.3d 322, 331 (5th Cir. 2013) (rejecting the plaintiff's hostile work environment claim because he did not allege "any connection between his race and national origin and the harassment alleged in the complaint").

Plaintiff claims that he has met his burden in showing that the Principal's excessive visits to Plaintiff's classroom were based on race because none of the other similarly situated non-class members were subject to such visits.

---

[2] Because Plaintiff filed his Second Charge of Discrimination on October 6, 2014, only the facts that occurred between filing the First and Second charges of discrimination are properly exhausted for consideration at this time.  Accordingly, although Plaintiff alleges that the Principal visited his office more than 35 times between August and December 34, only those visits that occurred between August 2014 and October 6, 2014 are properly before the Court.

(Dkt. # 12 at 5.)  This, however, is not enough.  Plaintiff must allege that the harassment had a racial character or purpose.  Here, there are no allegations that the visits were based on race.  Accordingly, Plaintiff has not alleged sufficient facts to make out his prima facie case of hostile work environment.  See, e.g., Askew v. Raytheon Co., No. 3:13-CV-4220-G, 2014 WL 1567916, at *4 (N.D. Tex. Apr. 17, 2014) (dismissing hostile work environment claim where Plaintiff alleged that he, but not similarly situated white workers, was subjected to weekly status reports and project status inquiries because he did not plead any relationship between his race and the alleged harassment).  The Court therefore **DISMISSES WITHOUT PREJUDICE** Plaintiff's hostile work environment claim.

IV.   Retaliation

To establish a prima facie case of retaliation under Title VII, a plaintiff must show "(1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action."  Willis v. Cleco Corp., 749 F.3d 314, 317 (5th Cir. 2014).

Defendant contends that Plaintiff has failed to plead facts supporting an adverse employment action and a causal link between the adverse employment action and the protected activity.  (Dkt. # 8 at 10–11.)  Plaintiff counters that the retaliation consisted of the following incidents after filing his First Charge of

13

Discrimination: (1) he was wrongly accused of not submitting a lesson plan for the first week of school; and (2) he was visited more than 35 times between August and December 2014.[3]

Unlike in the Title VII discrimination context, an adverse employment action in the retaliation context is not limited to ultimate employment decisions, such as hiring, granting leave, discharge, promotion, and compensation.  McCoy v. City of Shreveport, 492 F.3d 551, 558 (5th Cir. 2007).  Rather, the action can be something that "a reasonable employee would have found . . . [to be] materially adverse" or, in other words, would have "dissuaded a reasonable worker from making or supporting a charge of discrimination."  Aryain, 534 F.3d at 484 (quoting Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68).  The materiality standard requires more than "normally petty slights, minor annoyances, and simple lack of good manners" that would not "create such deterrence."  Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68.  Context matters in determining whether an action falls into such a category, since "the real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed."  Id. at 69 (illustrating that a

_____

[3] Again, only those visits that occurred between August 2014 and October 6, 2014 are properly before the Court at this time.

schedule change may be a minor annoyance to most workers, but may not be to a

mother with school aged children).

Assuming the allegations in the Complaint are true, the Principal's

repeated classroom visits "interfere[ed] with Plaintiff's work performance and

disrupt[ed] Plaintiff's time with his students."  (Dkt. # 6 at 4.)  Nonetheless, the

visits are not the type of action that the Fifth Circuit considers materially adverse

so as to dissuade a reasonable worker from making a discrimination complaint.

Compare Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 332 (5th Cir. 2009)

(finding chastising by the plaintiff's supervisors and ostracization by her

coworkers insufficient to support adverse employment action in the retaliation

context); Muniz v. El Paso Marriott, 773 F. Supp. 2d 674, 681–82 (W.D. Tex.

2011) (holding that a supervisor's close monitoring of plaintiff's work was

insufficient to "dissuade a reasonable worker from making or supporting a charge

of discrimination"); Soublet v. La. Tax Comm'n, 766 F. Supp 2d 723, 734–35

(E.D. La. 2011) (finding that "plaintiff's complaints of increased or altered

supervision, criticism and documentation, even when considered together, would

not dissuade a reasonable worker from making or supporting a charge of

discrimination"), with Scott v. Grand Prairie Indep. Sch. Dist., No 3:11-CV-2094-

G, 2012 WL 1361621, at *6 (N.D. Tex. Apr. 19, 2012) (finding allegations that the

school district removed the plaintiff–teacher from certain classes that he was

certified to teach sufficient to meet the pleading requirements for materially adverse employment action in a retaliation claim); <u>Covalt v. Pintar</u>, No. CIV.A. H-07-1595, 2008 WL 2312651, at *10 (S.D. Tex. June 4, 2008) (finding allegations that plaintiff–teacher was "singled out for reprimands, disciplined for minor infractions, and subject to investigations that involved inquiries to individuals for whose union affairs she was responsible" sufficient to meet the pleading requirements for materially adverse employment action in a retaliation claim).[4]

   Again, the Court notes that Plaintiff's complaint alleges facts supporting constructive discharge, which would sufficiently plead an adverse employment action for the purpose of Plaintiff's retaliation claim.  (Am. Compl. ¶ 21.)  However, since the constructive discharge is not yet ripe for adjudication, <u>see</u> <u>Taylor</u>, 296 F.3d at 379, Plaintiff has failed to make out a prima facie case of discrimination.  Because exhaustion of administrative remedies would cure this procedural default, the Court **DISMISSES** the claim **WITHOUT PREJUDICE**. <u>See</u> <u>Pinkard</u>, 678 F.2d at 1218.

---

[4] Indeed, in this case, Plaintiff himself filed his Third Charge of Discrimination with the EEOC after being subjected to the alleged retaliatory conduct; thus, he was certainly not dissuaded from filing by the Principal's actions.

<u>CONCLUSION</u>

For the aforementioned reasons, the Court **GRANTS** Defendant's

Motion to Dismiss (Dkt. # 8).  Accordingly, Plaintiff's claims are **DISMISSED**

**WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, June 11 , 2015.

_____
David Alan Ezra
Senior United States Distict Judge